FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 12, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CRYSTAL L. GRAEBNER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:22-cv-00109-DWM<br><br>ORDER |

This case arises from Plaintiff Crystal Graebner's request for a civil harassment restraining order against former defendant Robert Fortenberry. *See* ECF No. 1 at 15–30. On April 29, 2022, Spokane County District Court issued the temporary restraining order and set a final hearing for May 12. *Id.* at 11–14. On May 11, Fortenberry removed the action to federal court because he is a federal employee and the state court order allegedly arose out of and related to his federal employment. *See generally id.*; 28 U.S.C. § 1442(a). Subsequently, the Attorney General certified that Fortenberry was acting within the scope of his office or employment at the relevant time, and the United States was substituted as the

1

named defendant. ECF No. 14; 28 U.S.C. § 2679(b), (d). Fortenberry was dismissed from the action with prejudice. ECF No. 14.

The United States now seeks to dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. ECF No. 15. Neither party requests oral argument. For the reasons stated below, the United States' motion is granted.

## LEGAL STANDARD

A Rule 12(b)(1) motion may be either facial or factual. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Id.* Nevertheless, "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Id.* (alteration and quotation marks omitted).

## BACKGROUND

While the parties agree that this case arises out of an employment dispute, they disagree as to the underlying facts of that dispute and whether the alleged conduct extends into the private sphere. They also disagree about whether the case belongs in federal court and whether the United States is the proper party. Ultimately, dismissal for lack of subject matter jurisdiction is appropriate based on the face of Graebner's petition, and the Court need not wade into the factual debate. Nevertheless, a brief factual background is provided below.

### I. Work History

Graebner is an IT specialist at the Veteran's Affair's ("VA") Office of Information Technology at the Mann-Grandstaff Medical Center in Spokane, Washington. *See* ECF No. 17 at ¶ 1. Fortenberry was the VA Area IT Manager—Chief of Operations in the Spokane-Walla Walla Region—and Graebner's former second level supervisor. ECF No. 10 at ¶¶ 1, 6. Fortenberry was also the direct supervisor of Wayne Howey, who was the IT Operations supervisor at the Medical Center and Graebner's direct supervisor. *Id.* ¶ 8. Howey also supervised John Lamont. *Id.* at ¶ 7.

On February 8, 2022, Fortenberry conducted an informal counseling session with Howey, Graebner, and Lamont about possible EEO violations (i.e., reported inappropriate supervisor-subordinate relationships between Howey and Graebner,

3

and Howey and Lamont), and potential prohibited personnel practices (i.e., favoritism). *See id.* at ¶¶ 8–10, 12, 14. During that meeting, Fortenberry recalls that all three employees denied any special relationship, *id.* ¶ 15, although Graebner states that she indicated they had casual contact outside of work, ECF No. 17 at ¶¶ 8, 10. In a subsequent one-on-one meeting with Fortenberry, Howey denied having a romantic relationship with Graebner. ECF No. 10 at ¶ 17. In truth, all three employees spent time together outside of work and Howey and Graebner were in an intimate relationship. *Id.* ¶ 19; *see* ECF No. 17 at ¶¶ 2–5.

The next day, on February 9, 2022, Fortenberry was informed by his direct supervisor James Horner that Howey had filed a hostile work environment complaint against him. ECF No. 10 at ¶ 20. Due to the complaint, Fortenberry was assigned to work remotely and was given non-supervisory duties for the duration of the investigation. *Id.* ¶ 24. Horner then substituted Howey for Fortenberry as the IT Supervisor. *Id.* at ¶¶ 24, 28, 31. On March 8, Horner also informed Fortenberry that his supervisory authority was removed and he was not to return to the VA campus or have contact with any staff. *Id.* ¶ 28.

On March 21, 2022, Fortenberry sent a confidential, encrypted email to senior members of the VA leadership team complaining of Howey, Graebner, and Lamont's misconduct and lack of candor. *Id.* ¶ 40. Photographs of Howey and Graebner engaged in public displays of affection were attached to the email. *Id.*

4

While the source of those photographs remains unknown, *see id.* ¶ 38 (Fortenberry describing them as "unsolicited"), Graebner believes they were taken on March 18 right outside her home, ECF No. 17 at ¶ 16. Horner was copied on Fortenberry's March 21 email. ECF No. 10 at ¶ 40.

On March 23, 2022, VA leadership acknowledged receipt of Fortenberry's email and indicated his misconduct complaint would be reviewed. *Id.* ¶ 41. That review was delegated to Horner, *id.* ¶ 41, with whom Howey had a friendly business relationship, *id.* ¶ 11. Howey was removed as Acting Area Manager but still permitted to supervise projects and work assignments. *Id.* ¶ 43. Horner ultimately shared the attached photos with Howey, who in turn shared them with Graebner. *Id.* ¶¶ 47–49; ECF No. 1 at 27–28. On April 27, 2022, Horner informed Fortenberry that a VA EEO sexual harassment complaint had been filed against him, but would not tell Fortenberry the identity of the complainant or the specifics of the allegations. ECF No. 10 at ¶ 51.

## II. The Petition

On April 29, 2022, Graebner filed a Petition for an Order of Protection against Fortenberry in Spokane County District Court. ECF No. 1 at 15–30. In that Petition, Graebner alleged that Fortenberry took pictures of her and Howey kissing outside of her home. *See id.* at 17. She further alleged that Fortenberry sent those pictures to Howey, *see id.*, and reviewed her personal records without

5

permission, *id.* at 18. She submitted the photos and email with her Petition. *See id.* at 29. Graebner also indicated that she had filed an EEO complaint against Fortenberry. *See generally id.* The state court granted her Petition the same day, entering a Temporary Anti-Harassment Order for Protection and setting final hearing for May 12. *Id.* at 11–14.

### III. Procedural History

Fortenberry removed the action to federal court on May 11, 2022. *See generally id.* On June 22, Fortenberry filed a "notice" and proposed order to substitute the United States as the proper party under the Federal Employees Liability Reform and Tort Compensation Act (the "Westfall Act"), *see* 28 U.S.C. § 2679. ECF No. 7. On June 27, counsel appeared on behalf of Graebner, ECF No. 12, and on July 6, the United States was substituted in as the defendant and Fortenberry was dismissed with prejudice, ECF No. 14. On August 19, the United States filed the present motion. ECF No. 15. Graebner responded on September 9, ECF Nos. 17, 18, and the United States replied on September 26, ECF Nos. 22–25.

## ANALYSIS

Because Graebner does not have a cognizable claim against the United States and, as it relates to Fortenberry, the state court order interfered with the job duties of a federal employee, this matter is dismissed with prejudice.

### I. Removal and Substitution of the United States

6

Graebner challenges the propriety of removal under 28 U.S.C. § 1442(a)(1) and the substitution of the United States as a party under the Westfall Act, 28 U.S.C. § 2679(b)(1), albeit indirectly.  This is problematic insofar as this is the first time Graebner has objected to either action.  To wit, Graebner has not timely requested relief through a motion to remand or a motion for reconsideration.  *See, e.g.*, 28 U.S.C. § 1447(c) (a motion to remand following removal must be made within 30 days).  Nevertheless, both actions survive further scrutiny.

**A.  Removal**

Section 1442(a)(1) allows federal officers or those "acting under" any "agency" or "officer" of the United States to remove to federal court suits brought against them in state court, when they were acting "in an official or individual capacity, for or relating to any act under color of such office."  Thus, removal is appropriate if the defendant's conduct arose within the scope of his federal duties, and he raises a colorable federal defense. *Mesa v. California*, 489 U.S. 121, 139 (1989).  Those requirements are met here.  As a VA employee, Fortenberry acted under an agency and the dispute related to a federal workplace harassment action, which is "closely connected with[] the performance of his official functions." *Jefferson Cnty. v Ackeri*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring).  Fortenberry also asserted federal defenses under the doctrine of sovereign

7

immunity and the federal workplace remedial scheme. *See* ECF No. 1 at 4–6. Thus, removal was proper.

Graebner argues that because the United States removed the action, it cannot now challenge jurisdiction, i.e., "[t]hey cannot have it both ways." ECF No. 18 at 3, 8. But it can. *See Napoleon Hardwoods, Inc. v. Professionally Designed Benefits*, 984 F.2d 821, 822 (7th Cir. 1993) ("[E]ven the party which invoked federal jurisdiction may later challenge it . . . .").

**B.  Substitution**

"The Westfall Act provides a procedure by which the federal government determines whether an employee is entitled to immunity." *Saleh v. Bush*, 848 F.3d 880, 888 (9th Cir. 2017). After the employee provides all necessary information to the government, *see* 28 U.S.C. § 2679(c), the Attorney General determines whether "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," *id.* § 2679(d)(1). "If so, the Attorney General issues a 'scope of certification,' which 'transforms an action against an individual federal employee into one against the United States.'" *Saleh*, 848 F.3d 888 (quoting *Hui v. Castaneda*, 559 U.S. 799, 810 (2010)). The "United States shall be substituted as the party defendant," 28 U.S.C. § 2679(d)(1), and the employee is released from liability:

> The remedy against the United States . . . is exclusive of any other civil action or proceeding for money damages by reason of the same subject

8

matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

*Id.* § 2679(b)(1).

Graebner challenges substitution under this Act on two grounds: (1) Fortenberry was not acting within the scope of his employment and (2) Graebner seeks only injunctive relief. Neither argument was raised in response to the original substitution notice nor did Graebner seek to set aside that order; indeed, she still has not sought such relief.[1]

### 1. Scope of Employment

The Westfall Act was "designed to immunize covered federal employees not simply from liability, but from suit." *Osborn v. Haley*, 549 U.S. 225, 238 (2007). The Act explicitly states that in removed actions, the "certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . shall

---

[1] In her response brief, Graebner states: "Plaintiff requests an opportunity to reverse the Court[']s decision to remove Mr. Fortenberry from this case." ECF No. 18 at 12. Graebner has not filed a motion for reconsideration. Nor would one be warranted under the applicable standard. *See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law.").

9

conclusively establish scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2). Thus, while Graebner insinuates that the Court acted prematurely in accepting the Attorney General's certification, *see* ECF No. 18 at 5 ("This Court granted the motion as an operation of law without requesting briefing from Plaintiff."), "Congress has barred a district court form passing the case back to the state court where it originated based on the court's disagreement with the Attorney General's scope-of-employment determination," *Osborn*, 549 U.S. at 243. "Section 2679(d)(2) does not preclude a district court from resubstituting the federal defendant as defendant *for purposes of trial* if the court determines, postremoval, that the Attorney General's scope of employment certification was incorrect. For purposes of establishing a forum to adjudicate the case, however, § 2679(d)(2) renders the Attorney General's certification dispositive." *Id.* at 242 (2007). Thus, from a jurisdictional perspective, the Court's hands were tied.

As it relates to the merits, while Graebner insists that the scope of employment question remains disputed, "the action is deemed to be brought against the United States unless and until the district court determines that the federal officer originally named as a defendant was acting outside of the scope of his employment." *Id.* at 252. The "scope of employment" is based on the respondeat superior principles of the state in which the alleged tort occurred. *Saleh*, 848 F.3d at 889. Graebner has not shown—let alone argued—that

10

Fortenberry's actions fall outside the scope of his employment under Washington law.

### 2. Injunctive Relief

Graebner further argues that the Westfall Act does not apply because she seeks only injunctive relief, not money damages. In his notice regarding substitution, Fortenberry characterized Graebner's complaint as alleging a state law tort claim for emotional distress and claims of workplace sexual harassment under Title VII of the Civil Rights Act of 1964. *See* ECF No. 7 at 9. In her response, Graebner insists that she is seeking only injunctive relief. ECF No. 18 at 3, 10. While the United States did not address this issue, at least one district court has explicitly rejected application of the Westfall Act in similar circumstances. *See Gaines v. Stenson*, 2022 WL 227095, at *3 (D. Ariz. Jan. 26, 2022) ("[A] suit for injunctive relief . . . is not encompassed by the Act to begin with.").

Graebner's inaction leaves the Court little choice where to go from here. While the face of Graebner's petition supported a tort claim subject to the Westfall Act, her most recent filing disavows such a claim. But in the absence of a money damages claim, Graebner has no remaining claim against the United States as she herself recognizes that the United States "has no control over [Fortenberry's] activities." ECF No. 18 at 13. Thus, it is not necessary to consider immunity or exhaustion under the Federal Tort Claims Act or Title VII. Graebner simply has

no remaining claim against the only remaining defendant, the United States. Dismissal is therefore appropriate on this ground alone. Even assuming Fortenberry could be re-substituted in the case, however, dismissal is warranted as discussed below.

## II.     Sovereign Immunity and the Supremacy Clause

Because jurisdiction under § 1442(a)(1) is derivative, a court may not exercise jurisdiction over a removed action unless the state court had jurisdiction, even if the action could have originally been filed in federal court. *In re Elko Cnty. Grand Jury,* 109 F.3d 554, 555 (9th Cir. 1997). Thus, if the state court lacked jurisdiction, "this Court lacks derivative jurisdiction under 28 U.S.C. § 1442(a)(1), and the case must be dismissed for lack of subject matter jurisdiction." *Gonzalez v. Mills*, 2011 WL 1379525, at *1 (D. Ariz. Apr. 12, 2011).

"[S]overeign immunity shields the United States and its officers from suit unless an express congressional waiver of that immunity applies. An action seeking a judgment that would interfere with the public administration or restrain the Government from acting constitutes a suit against the United States." *Kline v. Johns*, 2021 WL 3555734, at *2 (N.D. Cal. Aug. 2, 2021) (quotation marks omitted). "Likewise, an action against a government employee constitutes a suit against the United States assuming it would have one of these effects." *Id.* (quotation marks and alteration omitted). Here, the state court's Temporary

Protection Order precluded Fortenberry from "coming near and from having any contact or conversation" with Graebner, including "through others, by phone, mail, [and] electronically." ECF No. 1 at 13. He was also "restrained from entering or being within 1000 feet of any known location of [Graebner]." *Id.* While the VA itself placed Fortenberry on a remote work order and removed his supervisory abilities, that action was temporary and Fortenberry could have been summoned back to work at any time. But Fortenberry would not be able to go to work even if the VA restored his position because of the state court Order. As such, the Order "interfere[d] with Defendant's ability to perform his job as a federal employee[, and] . . . the state court lacked jurisdiction to impose terms that would impair the performance of Defendant's federal duties." *Kline*, 2021 WL 3555734, at *2; *see Figueroa v. Baca*, 2018 WL 2041383 (C.D. Cal. Apr. 30, 2018) ("[T]he terms of the Restraining Order restricting [the defendant employee]'s communications and movement at the federal workplace interfere with his ability to perform his duties as a federal employee and . . . disturb the federal agency's internal functions. The state court lacked jurisdiction to impose such terms due to federal sovereign immunity."); *Cubb v. Denise Belton*, 2015 WL 4079077, at *5 (E.D. Mo. July 6, 2015) ("[A]llowing a state-law injunction to prevent a federal employee from coming to work is inconsistent with the principle of federal supremacy and would disturb the federal agency's internal functions."); *Duckworth v. Owens*, 2020 WL

13

3064206, at *2 (E.D. Mo. June 8, 2020) (collecting cases). Likewise, enforcement by the state court violates the Supremacy Clause, which "precludes state courts from enforcing orders that interfere with the performance of federal officers." *Figueroa*, 2018 WL 2041383, at *3. Accordingly, dismissal is appropriate even if Fortenberry were re-substituted as the defendant.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the United States' motion, ECF No. 15, is GRANTED. This action is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the October 27, 2022 preliminary pretrial conference and associated deadlines are VACATED.

DATED this 12th day of October, 2022.

_____
Donald W. Molloy, District Judge
United States District Court

14